# IN THE COURT OF APPEALS OF IOWA

No. 13-1621
Filed June 11, 2014

ANDREA B. HEMESATH,
        Petitioner-Appellee,

vs.

IOWA DEPARTMENT OF TRANSPORTATION,
MOTOR VEHICLE DIVISION,
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Winneshiek County, Richard D. Stochl, Judge.

The agency appeals the district court's decision on judicial review that reversed the agency's decision to revoke Andrea Hemesath's driver's license. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Thomas J. Miller, Attorney General, and Michelle R. Linkvis, Assistant Attorney General, for appellant.

Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

The Iowa Department of Transportation, Motor Vehicle Division, (IDOT) appeals the district court's decision on judicial review that reversed the IDOT's six-month revocation of Andrea Hemesath's driver's license. The IDOT claims on appeal the district court should not have reversed its decision because it was granted the discretion to revoke the license, Hemesath did not meet her burden of proof, and there is substantial evidence in the record to support the IDOT's decision. The IDOT also asserts the district court was incorrect to conclude it acted unreasonably, arbitrarily, or capriciously, or that it abused its discretion in revoking the license. Because we find the district court was correct in determining the agency erred in concluding under Iowa code section 321.205 (2013) it was *required* to revoke Hemesath's license in this case, we affirm the district court's decision in part. However, the proper remedy when an agency fails to exercise its discretion is to remand the case to the agency so that it may exercise its discretion. We reverse the district court's reversal of the revocation and remand the case to the district court with instructions to remand to the IDOT so that it may exercise its discretion.

## I. Background Facts and Proceedings.

Andrea Hemesath lived and worked in Wisconsin in 2005, though she maintained her Iowa residency and Iowa driver's license. She was cited for and convicted of operating while intoxicated in Wisconsin as a result of an implied consent request. She had her privilege to drive in Wisconsin withdrawn from February 28, 2005, until August 29, 2005, because of her test result. She did not drive in Wisconsin or in Iowa during that time. She became eligible for

reinstatement of her driving privileges in Wisconsin as of August 29, 2005, but did not take steps to reinstate that privilege in Wisconsin until October 3, 2012.

Shortly after her driving privilege was reinstated in Wisconsin, the Wisconsin Department of Transportation sent documents to the IDOT that provided information regarding the withdrawal and reinstatement of her driving privileges as a result of the test result in 2005. On October 23, 2012, the IDOT issued a notice to Hemesath informing her that her Iowa driving privileges were going to be revoked for 180 days due to the 2005 Wisconsin test result.

Hemesath requested a hearing on the revocation. On February 20, 2013, a telephone hearing took place before an administrative law judge (ALJ). Hemesath appeared pro se; the IDOT did not appear but stood on the administrative record. The ALJ concluded the revocation did not "appear reasonable or even consistent with the concept of fundamental fairness" due to the late date of the Iowa revocation in relation to the Wisconsin violation. The decision concluded Hemesath's argument, that the purpose of the revocation had already been served in 2005 in Wisconsin, was rational. The ALJ rescinded the revocation decision.

The IDOT filed a motion for review of the proposed decision of the ALJ. The reviewing officer issued the final decision for the agency on May 20, 2013. In his decision, the reviewing officer cited the applicable Iowa Code section that permits Iowa to suspend or revoke a resident's driver's license upon its receipt of a notice of conviction for an offense which, if committed in this state, would be grounds for suspension or revocation. *See* Iowa Code § 321.205. However, the reviewing officer went on to say that under this section, the IDOT "is *required* to

suspend or revoke an Iowa driver's license upon receiving notice of a conviction in another state." (Emphasis added.) In support of this proposition, the reviewing officer cited an Iowa Supreme Court case from 1974. The reviewing officer noted it was unclear why the notification from Wisconsin took seven years to reach the IDOT, though the timing seemed to correspond with Hemesath's efforts to have her Wisconsin driving privileges reinstated. The reviewing officer concluded Hemesath had the burden to show not only that the delay was unreasonable but also that the delay actually prejudiced her substantial rights. While noting it was undoubtedly inconvenient to Hemesath for the revocations in Wisconsin and Iowa to run separately, it was not prejudicial. The reviewing officer reversed the ALJ's decision and reinstated the revocation.

Hemesath applied for judicial review of the IDOT's final decision on June 18, 2013. She claimed in her petition that the seven and one-half year delay in suspending her Iowa driving privileges was totally unreasonable and caused her undue hardship. She claimed she will now have to be on risk insurance for up to two or more years for a second time and go through all the other administrative punishments that were imposed on her by the state of Wisconsin in 2005.

The district court set a briefing schedule for the judicial review action. We note Hemesath did not file a brief, though her attorney did appear telephonically at the hearing on her behalf. In the written ruling, the court found that prior to a 1996 amendment to Iowa Code section 321.205, the IDOT did not have discretion as to whether a suspension should be ordered for an out-of-state conviction. However, under the revised wording of the statute, that action is now discretionary. The court noted the final agency decision stated it was "required"

to revoke upon receiving notice, which was an incorrect conclusion. Because the finding was based on an incorrect legal premise, "the decision must be reversed." The court went on to find that the "seven year delay between the Wisconsin conviction and this suspension to be unreasonable and unjust. Based on the discretionary nature of the statute, any finding that a suspension is merited is not supported by substantial evidence." The court reversed the agency's decision and ordered the IDOT to reinstate Hemesath's right to operate a motor vehicle.

The IDOT now appeals.

## II. Scope and Standard of Review.

On judicial review, we apply the standards set forth in Iowa Code chapter 17A to determine whether the conclusions we reach are the same as the district court. *Lee v. Iowa Dep't of Transp.*, 693 N.W.2d 342, 344 (Iowa 2005). If they are the same, we affirm; otherwise, we reverse. *Id.*

The standard of review depends on the type of error alleged. *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). "Because of the widely varying standards of review, it is 'essential for counsel to search for and pinpoint the precise claim of error on appeal.'" *Id.* (citation omitted). The IDOT cites *Willett v. Iowa Department of Transportation*, 572 N.W.2d 172, 173–74 (Iowa Ct. App. 1997), and claims this case involves a rule-making action of the agency and thus should be reviewed under Iowa Code section 17A.19(10)(n). However, this case does not involve the agency's "rule-making authority" but involves a contested case adjudication. *See Willett*, 572 N.W.2d at 173 (noting three types of administrative actions under the Iowa Administrative Procedures Act). The

IDOT also alleges this appeal involves a challenge to the factual findings of the agency and such findings must be reviewed under section 17A.19(10)(f).

We interpret the IDOT's claims on appeal to be a challenge to the district court's conclusion that the agency incorrectly interpreted Iowa Code section 321.205 and the district court's conclusion that the agency abused its discretion in revoking Hemesath's license—the ultimate conclusion reached the by the agency. When dealing with an agency's interpretation of law, we look to see whether the agency was vested with the authority to interpret the statute in question. *Neal v. Annette Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012). Because we find the IDOT has not been vested with the authority to interpret section 321.205, we are free to substitute our own judgment for that of the agency if we conclude the agency made an error of law. *Id.* However, we will give deference to the agency's interpretation of their own agency rules. *Id.*

A challenge to an agency's ultimate conclusion, in this case to revoke Hemesath's license, is a challenge to the agency's application of law to the facts of the case. *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 259 (Iowa 2012) ("'[I]f . . . the claim of error lies with the ultimate conclusion reached, then the challenge is to the agency's application of the law to the facts.'" (quoting *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006)). With this type of error alleged, we will reverse the agency's decision only if it is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(m); *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 558 (Iowa 2010).

**III. License Revocation.**

The IDOT relied on Iowa Code section 321.205 to support its revocation of Hemesath's driver's license. That section provides:

> The department is authorized to suspend or revoke the driver's license of a resident of this state or disqualify a resident of this state from operating a commercial motor vehicle for any of the following reasons:
> 1. Upon receiving notice of the conviction of the resident in another state for an offense which, if committed in this state, would be grounds for the suspension or revocation of the license or disqualification of the person from operating a commercial motor vehicle.
> 2. Upon receiving notice of a final administrative decision in another state that the resident has acted in a manner which would be grounds for suspension or revocation of the license or disqualification of the person from operating a commercial motor vehicle in this state.

The administrative rule that was adopted to implement section 321.205 states,

> The department may revoke an Iowa resident's license when the department is notified by another state that the person committed an offense in that state which, if committed in Iowa, would be grounds for revocation. The notice may indicate either a conviction or a final administrative decision. The period of the revocation shall be the same as if the offense had occurred in Iowa.
> This rule is intended to implement Iowa Code section 321.205

Iowa Admin. Code r. 761–615.30.

In the final agency action, the reviewing officer cited section 321.205 and then stated the IDOT "is *required* to suspend or revoke an Iowa driver's license upon receiving notice of a conviction in another state of an offense which, if committed in Iowa, would be grounds for suspension or revocation." (Emphasis added.) In support of this assertion, the reviewing officer cited *Ferguson v. Stilwill*, 224 N.W.2d 11, 12 (Iowa 1974)—"Under section 321.205 and section

321.210(6), The Code, the Iowa department of public safety is *required* to suspend or revoke an Iowa driver's license upon receiving notice of a conviction in another state of an offense which, if committed in Iowa, would be grounds for suspension or revocation." (Emphasis added.)

The district court stated on judicial review that the reviewing officer incorrectly concluded the IDOT was required to revoke Hemesath's license. The court stated that prior to a 1996 amendment the IDOT had no discretion as to whether to revoke someone's license based on an out-of-state conviction. The court found the code section has changed, and it was now discretionary as to whether a revocation is merited or not. The court concluded that because the revocation was based on an incorrect legal premise, the decision had to be reversed.

While we agree under section 321.205 it is within the agency's discretion as to whether or not to revoke a driver's license based on an out-of-state conviction, we disagree that the code section at issue ever mandated a revocation for such an offense or that the amendment in 1996 altered the code provision at issue. In 1993, the Iowa Legislature amended section 321.205 by adding a second unnumbered paragraph which stated: "The department shall suspend or revoke for one hundred eighty days the motor vehicle license of a resident of this state upon receiving notice of conviction in another state or under federal jurisdiction for an offense enumerated under section 321.209, subsection 8." 1993 Iowa Acts ch. 16, § 3. The same paragraph was amended again in the same year to read, "The department shall suspend or revoke for one hundred eighty days the motor vehicle license of a resident of this state upon receiving

notice of conviction in another state or under federal jurisdiction for a drug or drug-related offense." 1993 Iowa Acts ch. 87, § 4. These amendments made it mandatory for the IDOT to suspend or revoke a person's license if a person was convicted of a drug or drug-related offense in another state. In 1996, this unnumbered paragraph was stricken entirely. *See* 1996 Iowa Acts ch. 1218, § 58.

None of the amendments in 1993 or 1996 altered the first paragraph of section 321.205, which stated then, as it does today, "The department is *authorized* to suspend or revoke the driver's license of a resident of this state." (Emphasis added.) It is this language that is at issue in this case. Hemesath was not convicted of a drug or drug-related offense in Wisconsin, and there is no contention that the 1993 amendments would apply to her case. Thus, the district court's conclusion that the 1996 amendment to section 321.205 made a prior mandatory suspension discretionary is not accurate.

However, we ultimately agree with the district court's conclusion that the language of section 321.205 gives the IDOT the discretion of whether or not to suspend or revoke a driver's license based on an out-of-state conviction. The statute states that the department is "authorized" to suspend or revoke the license. It does not say the department must or shall suspend or revoke the license. *Cf.* 1996 Iowa Acts ch. 1218, § 58 (stating the department "shall suspend or revoke" the license of someone convicted of a drug or drug-related offense). The legislature clearly knows how to make use of language to make actions mandatory. *See State v. Ayers*, 590 N.W.2d 25, 31 (Iowa 1999) ("[T]he legislature has demonstrated its ability to use restrictive language when it desires

to do so."). In addition the administrative rules adopted by the IDOT further support the discretionary nature of a suspension or revocation under section 321.205—rules the agency adopted to implement this code provision. *See* Iowa Admin. Code r. 761–615.30 ("The department *may* revoke an Iowa resident's license . . . ." (emphasis added)).

The agency cited the *Ferguson* ruling in support of its statement that it was required to revoke Hemesath's license. The issue in *Ferguson* was whether there was a proper certification of an out-of-state conviction. 224 N.W.2d at 12–13. The court concluded the appellant had failed to preserve error on his claim by failing to object to the certification of the conviction when it was offered at the administrative hearing. *Id.* at 13. Despite the error preservation concern, the court went on to conclude that the certification at issue was adequate. *Id.* The *Ferguson* court was not called upon to interpret section 321.205 or pass on the issue of the agency's ability, or lack thereof, to exercise discretion in making the decision to suspend or revoke a driver's license for an out-of-state conviction. For that reason, we find the language in *Ferguson* that states the agency is *required* to suspend or revoke an Iowa driver's license upon receiving notice of a conviction in another state is dicta and not binding on us in this appeal. *See id.* at 12; *see also Boyles v. Cora*, 6 N.W.2d 401, 413 (Iowa 1942) (stating obiter dicta is a "passing expression[] of the court, wholly unnecessary to the decision of the matters before the court").

The IDOT here claims, despite the reviewing officer's citation to *Ferguson*'s proposition that it was required to revoke the license at issue here, the rest of the ruling from the reviewing officer indicates that he exercised his

discretion. We are unable to discern such an exercise of discretion from the reviewing officer's decision. The reviewing officer's decision stated the burden was on Hemesath to show the delay was unreasonable and that her substantial rights were prejudiced by the delay. In support of this proposition, the reviewing officer cited *McFee v. Iowa Department of Transportation*, 400 N.W.2d 578 (Iowa 1987). In *McFee*, the supreme court placed the burden of proof on the licensee to prove a delay of two and one-half years in the revocation of his license was unreasonable and resulted in actual prejudice. 400 N.W.2d at 581. However, the statute underlying the license revocation in *McFee* required the IDOT to revoke the license for in-state operating-while-intoxicated convictions. *See* 1982 Iowa Acts ch. 1167, § 13 (enacting Iowa Code § 321B.16 which stated in part that "the [IDOT] *shall* revoke the person's license" if there is a certification from a peace officer that there exists reasonable ground to believe the person operated a vehicle in violation of section 321.281 and the person submitted to and failed chemical testing). There was no such mandated revocation in this case. Instead, the IDOT was to exercise its discretion to determine whether or not to revoke Hemesath's license. The reviewing officer stated the revocation was inconvenient but concluded it was not prejudicial. Beside this brief statement, there is no indication the reviewing officer exercised his discretion in determining whether to revoke Hemesath's license. *See Frank v. Iowa Dep't of Transp.*, 386 N.W.2d 86, 89 (Iowa 1986) (concluding from the record that the agency did exercise its discretion in deciding whether to suspend a driver's license for violating his probation).

While we agree with the district court that the IDOT's decision was erroneously based on an incorrect legal premise that it was required to revoke Hemesath's license, we disagree with the remedy imposed by the district court. Despite finding the agency erred in failing to exercise its discretion as to whether to revoke Hemesath's license, the district court went a step further and found the seven-year delay between the Wisconsin conviction and the Iowa license revocation was "unreasonable and unjust." It concluded any finding that a suspension is merited was not supported by substantial evidence. However, where an agency fails to exercise its discretion, the proper remedy is to reverse and remand to the agency for it to exercise its discretion. *City of Davenport v. Newcomb*, 820 N.W.2d 882, 892 (Iowa Ct. App. 2012); *see also IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 631 (Iowa 2000) ("A failure to exercise discretion is an abuse of discretion.").

We affirm in part the district court's judicial review decision holding the IDOT erred in failing to exercise its discretion to determine whether to revoke Hemesath's license. However, we reverse the district court's decision finding the revocation should be reversed, and we instead remand this case to the district court with instructions to remand to the agency to permit the agency to exercise its discretion on the question of whether to revoke Hemesath's license under Iowa Code section 321.205.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**